# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>Brian W. Mead,<br><br>                    Debtor. | Chapter 7<br><br>Case No. 21-17470 (MEH) |
| Bunce D. Atkinson, Trustee for Debtor Estate of Brian Mead.<br>                         Plaintiff,<br>          vs.<br><br>Inspira Medical Center, Inc.<br><br>                         Defendant. | Adv. Pro. No. 24-01547 (MEH) |
| Inspira Medical Center, Inc.<br><br>                    Appellant,<br>          vs.<br><br>Bunce D. Atkinson, Trustee for Debtor Estate of Brian Mead.<br>                    Appellee. | Civil Action No. 3:25-cv-16383-ZNQ |

## APPELLANT'S REPLY BRIEF

i

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................... ii

TABLE OF AUTHORITIES ................................................................................ iv

SUMMARY OF ARGUMENT ........................................................................... 1

ARGUMENT........................................................................................................ 4

I.   THE TRUSTEE FAILS TO RECKON WITH THE DISTINCTION BETWEEN LEVYING ON REAL PROPERTY AND EXECUTING UPON IT. 4

A.   The priority rule focuses on who levies first, not who proceeds to execution and sale first................................................................................ 5

B.   N.J.S.A. 2A:17-1 does not mention levy. It governs the command in the writ of execution, which is a collection mechanism, not a levy on real property..................................................................................................... 5

II.   THE 2010 AMENDMENT TO N.J. CT. R. 4:59-1(D)(1) CHANGED NEW JERSEY LAW, AND THE TRUSTEE'S CONCESSIONS ESTABLISH THAT THIS COURT IS BOUND TO APPLY IT............................................. 7

A.   Two propositions the Trustee does not dispute determine the outcome of this issue. ...................................................................................... 7

B.   The amended rule says nothing about requiring a prior levy on personal property as a precondition to a valid levy on real property. ........................... 8

C.   The Civil Practice Committee report confirms the amendment's focus was on protecting debtors from precipitous sale of their homes, not on imposing a two-levy rule for lien perfection.................................................. 9

D.   Post-2010 New Jersey state court decisions confirm that the amendment addressed the motion-to-sell procedure, not a levy precondition. ..................10

III.   EVEN UNDER THE TRUSTEE'S FRAMEWORK, THE UNDISPUTED EVIDENCE ESTABLISHED THAT THE DEBTOR HAD NO PERSONAL PROPERTY IN NEW JERSEY...................................................................11

A.   The Trustee has cited no authority for the proposition that courts must disregard bankruptcy-record evidence showing the debtor had no personal property in the state.................................................................................12

B.   The Trustee's turnover-motion argument misunderstands the record....13

IV.    THE TRUSTEE'S POLICY ARGUMENTS DO NOT SUPPORT AFFIRMANCE. ...................................................................................13

CONCLUSION ...................................................................................15

CERTIFICATE OF COMPLIANCE...................................................................16

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Evcco Leasing Corp. v. Ace Trucking Co.*, 828 F.2d 188 (3d Cir. 1987) .............3, 7

*In re Catalano*, 643 B.R. 555 (Bankr. D.N.J. 2022) ................................................11

*Rector, Etc., of Holy Trinity Church v. United States*, 143 U.S. 457(1892) ...........15

*Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 543 (1941) ...................... 7

**State Cases**

*Birch Glen Condo. Ass'n, Inc. v. Boahene*, No. A-4357-13T2, 2015 N.J. Super. Unpub. LEXIS 779 (App. Div. Apr. 8, 2015) ....................................................10

*New Brunswick Sav. Bank v. Markouski*, 123 N.J. 402 (1991) ............................... 5

*Raniere v. I & M Invs., Inc.*, 159 N.J. Super. 329 (Ch. Div. 1978), *aff'd*, 172 N.J. Super. 206 (App. Div. 1980)........................................................................passim

*Rogan Equities, Inc. v. Santini*, 289 N.J. Super. 95 (App. Div. 1996) ................... 7

*Sanjuan v. Sch. Dist. of W. New York*, 256 N.J. 369 (2024)..................................14

*Schaefer-Jones v. Jones*, No. A-0029-21, 2022 WL 1592418 (App. Div. May 20, 2022) ................................................................................................................10

*State v. Sorensen*, 439 N.J. Super. 471 (App. Div. 2015) ...................................... 7

**State Statutes**

N.J.S.A. 2A:17-1 ................................................................................................passim

N.J.S.A. 2A:17-17 ...................................................................................................... 6

**State Rules**

N.J. Ct. R. 4:59-1(d)(1 .......................................................................................passim

**Other Authorities**

2010 Report of the Supreme Court Civil Practice Committee (Jan. 25, 2010).......10

iv

## SUMMARY OF ARGUMENT

In April of 2020, as the COVID-19 pandemic devastated New Jersey and the United States, Brian Mead tricked Defendant Inspira Medical Center into putting a deposit down on an order for gowns and other PPE that Inspira desperately needed but Mead had no ability to deliver. After some initial stalling, Mead eventually went radio silent, and Inspira's demand for the return of its deposit went unanswered. Inspira sued and won a judgment in state court. Mead was a Connecticut resident. He had no personal property in New Jersey other than a Chase bank account, but he did own real estate in New Jersey, a house in Beach Haven. Inspira levied on the bank account and that house.

Mead filed bankruptcy weeks later. The Trustee sold the shore house free and clear of liens with liens to attach to the proceeds with the same priority as against the house. The question is who has first claim on the net proceeds: Inspira or the Trustee. New Jersey law says that the judgment creditor who levies on an asset first has priority over other judgment creditors. The Trustee is treated as a judgment creditor who has levied as of the date of the bankruptcy petition. On that basis, Inspira had priority. But the Trustee asserted that Inspira's levy was not valid. The Bankruptcy Court granted summary judgment in favor of the Trustee, relying on a 1987 Third Circuit decision.

1

Neither the Bankruptcy Court nor the Trustee ever examined the difference between *levying* on real property and *executing upon* (i.e., selling) real property. Levy perfects a lien and establishes priority. Execution is how a creditor subsequently collects. The Inspira levy came first. The question is whether it was valid. The answer, under current New Jersey law, is yes.

The Trustee's entire case rests on a misinterpretation of N.J.S.A. 2A:17-1. The statute governs the *command in the writ of execution* — the sequence in which the sheriff is directed to *satisfy* the judgment — and says nothing about levies, let alone about requiring two of them. Unfortunately, that textual silence did not prevent New Jersey courts from reading into the statute a two-levy requirement based on the statute's direction that the sheriff sell personal property first. Beginning with *Raniere v. I & M Invs., Inc.*, 159 N.J. Super. 329 (Ch. Div. 1978), *aff'd*, 172 N.J. Super. 206 (App. Div. 1980), courts started interpreting the statute to require that a sheriff must execute on the debtor's personal property before executing against real estate, and imposed a corresponding good-faith duty to locate and levy on personal property first before levying on real estate.

The New Jersey Supreme Court's 2010 amendment to N.J. Ct. R. 4:59-1(d)(1) effectively overruled *Raniere*'s two-levy rule. The amended rule requires that execution be made out of personal property before the creditor may *proceed to sale* of real property. It says nothing about levying on personal property as a

2

precondition to levying on real property. The entire procedural apparatus the rule establishes — the noticed motion, the certification, the court order — is keyed to *sale*, not levy. Every New Jersey state court decision issued after the amendment has addressed only whether the motion to sell real property was properly decided. None has endorsed or applied *Raniere's* two-levy rule.

The Trustee's response to the 2010 amendment is that it merely "supplemented" existing case law. But two propositions the Trustee does not dispute resolve this question: the New Jersey Supreme Court has authority to change law by rule, and federal courts applying state law must recognize when that law has changed, even if it displaces prior federal circuit precedent. The amendment changed New Jersey law. The Bankruptcy Court never acknowledged the 2010 amendment or analyzed its significance. The Bankruptcy Court's reliance on *Evcco Leasing Corp. v. Ace Trucking Co.*, 828 F.2d 188 (3d Cir. 1987), a pre-amendment Third Circuit decision, was error.

Even accepting the Trustee's legal framework, the Bankruptcy Court's application of it was wrong. The undisputed record — the Debtor's own sworn testimony, his wife's certification, and the Trustee's own conduct in allowing personal property to be removed from the Beach Haven Property before the auction — established that the Debtor had no personal property in New Jersey available to satisfy Inspira's judgment other than the Chase bank account on which

3

Inspira also levied. The Trustee cites no authority for the proposition that courts must disregard this evidence. Neither did the Bankruptcy Court. There is no such authority. The good-faith exhaustion requirement, whatever its current contours, does not demand that a creditor perform futile investigative steps to locate property that does not exist.

Finally, the Trustee's invocation of New Jersey's statutory policy of protecting debtors' real property proves too much. That policy is served by requiring creditors to exhaust their claims to personal property *before* they may sell a debtor's home. It is not served — and is not designed to be served — by voiding a levy on real estate, where no personal property in New Jersey (other than the Chase bank account) existed to be found. The Bankruptcy Court's ruling should be reversed.

## ARGUMENT

I. **THE TRUSTEE FAILS TO RECKON WITH THE DISTINCTION BETWEEN LEVYING ON REAL PROPERTY AND EXECUTING UPON IT.**

The central question in this appeal is whether Inspira's levy on the Beach Haven Property was valid to perfect its judgment lien. The Trustee argues that it was not, because Inspira allegedly failed to comply with the good-faith personalty-exhaustion requirement created out of whole cloth by *Raniere v. I & M Invs., Inc.*, 159 N.J. Super. 329 (Ch. Div. 1978), *aff'd*, 172 N.J. Super. 206 (App. Div. 1980), and N.J.S.A. 2A:17-1.

4

### A. The priority rule focuses on who levies first, not who proceeds to execution and sale first.

New Jersey law is clear that the judgment creditor who levies first has priority over all non-levying judgment creditors. *New Brunswick Sav. Bank v. Markouski*, 123 N.J. 402, 413 (1991). Under 11 U.S.C. § 544(a), the Trustee is deemed, as of the petition date, to hold the status of a hypothetical judicial lien creditor who has levied upon the Debtor's property. Inspira levied first.

### B. N.J.S.A. 2A:17-1 does not mention levy. It governs the command in the writ of execution, which is a collection mechanism, not a levy on real property.

The statutory text is the starting point, and it is dispositive here. N.J.S.A. 2A:17-1 provides that in every writ of execution issued against real estate, the sheriff "shall be commanded" to first cause to be made "of the goods and chattels" of the judgment debtor the debt, damages, and costs, and only "if sufficient goods and chattels of such party cannot be found in his county" shall the sheriff proceed to satisfy the debt "of the real estate." This is a command about the order in which the sheriff satisfies a judgment — a command about *collection*. It says nothing about the act of levying on real estate or about any prerequisite that must be met before a levy on real estate may be made.

That omission is not accidental. New Jersey law expressly distinguishes between levying and selling. N.J.S.A. 2A:17-17 provides that "all real estate shall be liable to be *levied upon and sold* by executions" — two separate acts,

5

enumerated separately. Levy comes first; sale follows. The Trustee does not dispute that these are distinct concepts.

The Trustee argues that N.J.S.A. 2A:17-1 "makes no delineation between satisfying the debt through the real estate through a levy as opposed to sale," and that the statute's point is that the creditor must look to personalty first before seeking to "attach the debt to the real property." Resp. Br. at 11. But this argument actually proves Inspira's point. If the statute treats levy and sale as one undifferentiated process of "attaching" or "satisfying" a debt out of real property, then it cannot be the source of a specific rule requiring a prior *levy* on personal property before a *levy* on real property. The Trustee cannot have it both ways: either the statute governs "levying" (in which case its text must be consulted and it has no such requirement), or it governs "execution/sale" (in which case it doesn't govern the levy at all).

The *Raniere* line of cases imposed the good-faith personalty-exhaustion requirement as a matter of judicial construction, not as a matter of statutory text. A 1978 trial court read the statute to "mandate[] that the sheriff exhaust all personalty of the debtor that can be located within the county before levying and executing against the debtor's realty." *Raniere*, 159 N.J. Super. at 337. The statute's words did not compel that gloss, and — as the next section explains — the New Jersey Supreme Court effectively overrode it in 2010.

6

**II.    THE 2010 AMENDMENT TO N.J. CT. R. 4:59-1(D)(1) CHANGED NEW JERSEY LAW, AND THE TRUSTEE'S CONCESSIONS ESTABLISH THAT THIS COURT IS BOUND TO APPLY IT.**

**A. Two propositions the Trustee does not dispute determine the outcome of this issue.**

Two legal propositions control the analysis here. The Trustee concedes both.

*First*, the New Jersey Supreme Court has the authority to change New Jersey law through its court rules. *See State v. Sorensen*, 439 N.J. Super. 471, 482 n.2 (App. Div. 2015) (observing that a rule amendment "effectively overrules" prior case law); *Rogan Equities, Inc. v. Santini*, 289 N.J. Super. 95, 109 (App. Div. 1996) (same observation as to a rule amendment "effectively overrul[ing]" prior authority). The Trustee does not dispute this.

*Second*, a federal court applying state law is bound to recognize when that law has changed, even when the change overrules prior federal precedent on the same question. *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 543 (1941). The Trustee does not dispute this.

The Bankruptcy Court did not acknowledge the 2010 amendment to N.J. Ct. R. 4:59-1(d)(1) or analyze its effect. The Trustee does not dispute this either.

The 2010 amendment changed New Jersey law. The Bankruptcy Court was required to apply the amendment rather than the pre-amendment federal decision in *Evcco Leasing Corp. v. Ace Trucking Co.*, 828 F.2d 188 (3d Cir. 1987). Having

7

failed to do so, it erred as a matter of law. And this Court, sitting in plenary review, should apply the correct New Jersey law.

**B. The amended rule says nothing about requiring a prior levy on personal property as a precondition to a valid levy on real property.**

N.J. Ct. R. 4:59-1(d)(1) as amended states that "[t]he execution shall be made out of the judgment debtor's personal property before the judgment-creditor may proceed to *sale* of the debtor's real property." N.J. Ct. R. 4:59-1(d)(1) (emphasis added). The rule then provides: "[i]f the debtor's personal property is insufficient or cannot be located, the judgment creditor shall file a motion, on notice, for an order permitting the *sale* of the real property . . . supported by a certification specifying in detail the actions taken by the judgment creditor to locate and proceed against the personal property." *Id.* "No sale of real property shall proceed unless an order granting the motion has been entered." *Id.* (emphasis added).

The rule never mentions "levy," "levying," or any other variation. Every operative provision of the rule is anchored to "sale" or "proceed to sale." The motion requirement, the certification requirement, the notice requirement, the order requirement — all are triggered by and directed at the sale of real property, not the levy upon it. Interpreting the rule to impose a prior-personal-property-levy requirement as a condition to a valid real-property levy requires reading into the rule language that isn't there.

8

The Trustee responds that the rule "supplements, rather than displaces," the existing personalty-exhaustion framework. Resp. Br. at 13. But this gets the logic backwards. When the New Jersey Supreme Court amends a rule governing the same subject matter, the amendment speaks for itself. If the New Jersey Supreme Court intended to preserve a rule that the judgment creditor must *levy* on personal property before *levying* on real property, it could have said so. It didn't. Instead, the rule addresses only the prerequisite to *sale*. The only reasonable inference is that the Supreme Court understood the *Raniere* second-levy requirement to concern the sale process, and it replaced that judicial construct with a more structured and transparent procedure: a noticed motion supported by a certification of the creditor's efforts.

### C. The Civil Practice Committee report confirms the amendment's focus was on protecting debtors from precipitous sale of their homes, not on imposing a two-levy rule for lien perfection.

The Trustee relies on the 2010 Report of the Supreme Court Civil Practice Committee to argue that the amendment merely codified existing case law. The report says otherwise. The Committee explained that it recommended requiring a motion "to execute on real property accompanied by a certification listing in detail the steps taken to satisfy the debt by other means." 2010 Report of the Supreme Court Civil Practice Committee (Jan. 25, 2010). The concern, as the Committee noted, was providing notice to debtors that failure to respond to the motion "may

9

result in the loss of a home" and ensuring that creditors have, in fact, tried to collect by other means before seizing a debtor's residence. *Id.*

That is a *sale*-stage protection, not a levy-stage rule. It is designed to prevent creditors from moving to sell a debtor's home without first genuinely trying to collect from other sources. The mechanism for enforcement is the motion, the certification, and the court order — all prerequisites to *sale*. The lien-perfection function of the levy is entirely separate, and the Committee's report betrays no awareness of any intent to alter how or when a levy perfects a lien.

### D. Post-2010 New Jersey state court decisions confirm that the amendment addressed the motion-to-sell procedure, not a levy precondition.

Both New Jersey state court decisions that have applied N.J. Ct. R. 4:59-1(d)(1) since the 2010 amendment address the same narrow issue: whether the trial court properly denied the judgment creditor's motion to sell real property. *Birch Glen Condo. Ass'n, Inc. v. Boahene*, No. A-4357-13T2, 2015 N.J. Super. Unpub. LEXIS 779 (App. Div. Apr. 8, 2015) (affirming denial of motion to sell); *Schaefer-Jones v. Jones*, No. A-0029-21, 2022 WL 1592418 (App. Div. May 20, 2022) (reversing and remanding denial of motion to sell). The Trustee does not dispute this.

Neither case endorsed nor applied a two-levy rule. Neither held that a levy on real property is void unless preceded by a levy on personal property. If the *Raniere* framework had survived the 2010 amendment intact and continued to govern the validity of real-property levies, one would expect those cases to say so. Their

10

silence is telling. What the courts have grappled with post-amendment is the motion-to-sell procedure, which confirms that the amendment's operative effect is at the sale stage.

The Trustee also cites *In re Catalano*, 643 B.R. 555 (Bankr. D.N.J. 2022), a post-2010 federal trial-level bankruptcy court decision that continued to apply the good-faith exhaustion framework. But *Catalano* is a bankruptcy court decision, not a New Jersey state court decision, and it does not analyze whether the 2010 amendment changed the *Raniere* rule. A federal court's interpretation of state law, particularly one that does not engage with a subsequent state supreme court rule amendment, is not persuasive on this Court's assessment of current New Jersey law, let alone binding.

## III.   EVEN UNDER THE TRUSTEE'S FRAMEWORK, THE UNDISPUTED EVIDENCE ESTABLISHED THAT THE DEBTOR HAD NO PERSONAL PROPERTY IN NEW JERSEY.

Even if this Court were to conclude that N.J.S.A. 2A:17-1 and the *Raniere* good-faith exhaustion requirement govern the validity of the real-property levy, the Bankruptcy Court still erred. The undisputed evidence — from the Debtor himself, from the Trustee's own actions, and from Cathleen Mead's sworn certification — established that the Debtor had no personal property in New Jersey available to satisfy Inspira's judgment.

11

**A. The Trustee has cited no authority for the proposition that courts must disregard bankruptcy-record evidence showing the debtor had no personal property in the state.**

The Debtor certified in August 2021 — before Inspira directed the Ocean County Sheriff to levy on the Beach Haven Property — that he did not reside at the Beach Haven Property and that his personal property was located at his Connecticut residence. APPX368. At the § 341 meeting of creditors, the Debtor confirmed under oath that his automobiles, jewelry, and other personal property were at his Connecticut residence. APPX369. His wife, Cathleen Mead, filed a sworn certification that the personal property at Beach Haven belonged to her and her children, not to the Debtor. APPX340. The Trustee did not object to that claim and permitted Cathleen Mead to remove personal property from the Beach Haven Property before the auction. APPX39-40.

This is not a case of a creditor who took shortcuts to avoid finding personal property that was actually there. This is a case where the evidence — confirmed by the Debtor under oath and credited by the Trustee himself — establishes that the Debtor had no personal property in New Jersey other than the Chase bank account.

The Bankruptcy Court held, without citing any authority, that evidence learned after the levy and after the bankruptcy filing is "immaterial" to whether Inspira satisfied the good-faith exhaustion requirement. The Trustee defends this ruling without citing any authority either. That is not a coincidence. There is no authority

12

for the proposition that courts must assess good-faith compliance in a factual vacuum, ignoring uncontested evidence bearing on the very question at issue. Good faith is assessed by examining what the creditor did and what the circumstances warranted. Where all available evidence — including evidence available before the levy — confirms the absence of personal property, requiring additional fruitless investigative steps serves no protective purpose.

**B. The Trustee's turnover-motion argument misunderstands the record.**

Inspira's filing of a motion for turnover of bank levy proceeds on September 22, 2021 — one day before the bankruptcy petition — is not relevant. Inspira had already levied on the Debtor's Chase Bank account in August 2021. APPX38. That levy perfected Inspira's interest in those funds. The September 22 motion was the procedural vehicle by which Inspira sought *to collect what it had already levied —* namely, the $5,498.19 that Chase was holding. Filing a motion to collect from an existing levy is the ordinary next step after a successful bank levy. The Trustee's argument proves nothing about whether Inspira had a good-faith reason to believe additional personal property existed in New Jersey before directing the real-property levy.

**IV.    THE TRUSTEE'S POLICY ARGUMENTS DO NOT SUPPORT AFFIRMANCE.**

The Trustee contends that New Jersey's statutory balancing of creditors' and debtors' rights is a reasonable policy choice and therefore cannot be characterized

13

as "absurd." Resp. Br. at 15–16. Inspira does not dispute that the legislature may choose to prioritize debtors' real property over judgment creditors' collection rights. The policy choice underlying N.J.S.A. 2A:17-1 is defensible on its own terms.

But that policy choice is not implicated here. The question is whether the Trustee's *specific interpretation* of that statute — which would void a levy for failure to perform pre-levy investigative steps the statute never mentions, in circumstances where the Debtor himself had certified that he had no personal property in New Jersey — can be squared with the law's purpose. It cannot. The purpose of requiring a creditor to exhaust personal property before seizing a debtor's real property is to protect the debtor's home from unnecessary forced sale. That purpose is not served when, as here, the debtor had no personal property in the state to be found. Denying lien perfection in that circumstance does not protect the debtor. It simply transfers the benefit of Inspira's judgment lien from Inspira to the bankruptcy estate.

The New Jersey Supreme Court has long held that statutory interpretations leading to "results inconsistent with the overall purpose of the statute" should be rejected. *Sanjuan v. Sch. Dist. of W. New York*, 256 N.J. 369, 379 (2024). And the Supreme Court of the United States has similarly held that when a statute's "literal construction" would be "absurd, the act must be so construed as to avoid the

14

absurdity." *Rector, Etc., of Holy Trinity Church v. United States*, 143 U.S. 457, 460 (1892). Applying the good-faith exhaustion requirement to void Inspira's levy on property that the Debtor himself disclaimed any significant interest in, and ignoring the conceded absence of any personal property in New Jersey, is precisely the kind of result that courts should decline to reach.

## CONCLUSION

The Bankruptcy Court's error was one of omission. It did not consider the distinction between levying and executing. It did not acknowledge the 2010 amendment to N.J. Ct. R. 4:59-1(d)(1) or reckon with its consequences. It did not engage with the undisputed evidence that the Debtor had no personal property in New Jersey. Each of those omissions independently warrants reversal. Together, they compel it.

Dated: March 6, 2026

/s/ William G. Wright
_____

**CAPEHART & SCATCHARD**
William G. Wright
Alan Fox
8000 Midlantic Drive, Suite 300 S
Mt. Laurel, NJ 08054
Tel: (856) 234-6800
Email: wwright@capehart.com
        afox@capehart.com
*Counsel for Inspira Medical Center, Inc.*

15

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. Bankr. P. 8015(a)(7)(C), the undersigned hereby certifies that:

1. This brief complies with the type-volume limitations of Fed. R. Bankr. P. 8015(a)(7)(B) because the brief contains 3465 words, excluding the parts of the brief exempted by Fed. R. Bankr. P. 8015.

2. This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and type style requirements of Fed. R. Bankr. P. 8015(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman.

Dated: March 6, 2026                             /s/ William G. Wright

                                                 _____
                                                 William G. Wright
                                                 **CAPEHART & SCATCHARD**

16